IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NTC MARKETING, INC.,            )
                                )
    Plaintiff,                  )
                                )  Cause No. 3:14-cv-00573-JPG-PMF
vs.                             )
                                )
M. J. RESURRECTION, INC.,       )
                                )
    Defendant.                  )

## COMPLAINT

COMES NOW Plaintiff and for its cause of action against defendant, states as follows:

1. NTC Marketing, Inc. ("NTC") is a New York corporation with its principal place of business in New York.

2. M.J. Resurrection, Inc. d/b/a Fresh Warehousing ("FW") is an Illinois corporation with its principle place of business in St. Clair County, Illinois.

3. Jurisdiction in this matter is based upon diversity of citizenship, 28 USC 1332, and the amount in controversy exceeds $75,000.

4. NTC cans, sells and distributes certain food products, including canned pineapple and canned fruit salad.

5. FW provides warehouse services for the storage and distribution of products, and it provided these services to NTC for many years.

6. NTC and FW entered into an Agreement dated as of March 21, 2012 (the "Agreement") for the storage of NTC's product, including canned pineapple and canned

1

fruit salad, at FW's warehouse in St. Clair County, Illinois. A copy of the Agreement is attached hereto and marked Exhibit 1.

7. NTC has contracts with third parties for the delivery of its products at certain times and in certain amounts ("Third Party Contracts"). The canned products of NTC have a sell by date on each can. The Third Party Contracts require the delivery of NTC's products with a time period between the delivery date and the sell by date.

## COUNT I (BREACH OF CONTRACT)

8. NTC incorporates by reference paragraphs 1 through 7 above as if fully stated herein.

9. In the Agreement, in ¶ 2(a), FW was required to ship NTC's products on a "first in first out" basis, unless specific lot shipments were specified.

10. In the Agreement, FW agreed to reimburse NTC for the cost of any products that it damaged due to its failure to ship products on a "first in first out" basis, or due to any other negligence or mishandling.

11. Specifically, under ¶ 2(d) of the Agreement, FW agreed "to promptly reimburse [NTC] for its wholesale cost of any Products, as of the date of the incident, that is un-saleable because it was not rotated as set forth in Section 2(a), or that is otherwise un-saleable due to [FW's] mishandling of the Products or other negligence."

12. Furthermore, in the Agreement at ¶ 2(h)(i), FW also agreed that, upon termination of the storage relationship, final payment from NTC would not be due and payable "until all Products remaining with [FW] are transferred, physically counted and verified."

13. Pursuant to ¶ 2(h)(ii) of the Agreement, FW agreed that any final payment from NTC would be held in escrow and that FW would "not interfere, delay or otherwise prevent [NTC] from removing inventory at its discretion for any circumstance or reason."

14. FW breached these and other provisions of the Agreement.

15. Specifically, on or about November 5, 2013, FW sent NTC an invoice for $94,565.00 claiming the charges were for the disposal and handling of damaged product belonging to NTC.

16. The invoice included 3,070.5 hours of undefined "labor" at a cost of $92,115 and seven (7) dumpsters at a cost of $2,450, but no additional information was provided.

17. NTC had no record of such product being thrown away, and FW failed and refused to provide NTC with documents of inventory to verify the inventory it held of NTC's products.

18. FW was required to maintain its warehouse in a reasonably clean and proper condition that protects the products of NTC.

19. If FW actually disposed of seven (7) dumpsters full of NTC's product, then FW must have failed to maintain its warehouse in a clean and proper condition

20. On information and belief, FW had leaks and holes in its roof which caused water to leak onto the products of NTC, thereby causing certain cans to be unsalable.

21. FW also damaged NTC's product by dropping it during transport.

22. FW is liable to NTC for the amount of NTC's products damaged or destroyed due to FW's negligence and failure to provide proper warehousing.

23. FW also failed to ship NTC products on a "first in first out" basis, which was required per § 2(a) of the Agreement.

24. NTC reasonably relied on the Section 2(a) of the Agreement and expected that FW was shipping goods in compliance with the terms of the Agreement.

25. FW failed to disclose to NTC that it was not shipping NTC's products on a "first in first out" basis.

26. FW failed to provide NTC with accurate information on the amount of inventory being held.

27. Upon information and belief, if FW actually disposed of seven (7) dumpsters full of NTC's product, this product included product whose sell by date had expired and cans containing product that were damaged due to the actions or failure to act of FW to ship NTC's products on a "first in first out" basis and by failing to provide a proper and secure warehouse. Further, the amount claimed by FW was excessive and not reasonable for the labor required to be expended for the destruction of NTC's products.

28. FW's invoice for Ninety-Four Thousand Five Hundred and Sixty-Five Dollars ($94,565.00) is a direct breach of its obligations under Section 2(d) of the Agreement.

29. Pursuant to ¶ 2(h)(ii) of the Agreement, NTC offered to put the full amount of the $94,565 into escrow until all products remaining with FW were transferred, physically counted and verified and the dispute could be resolved.

30. FW failed and refused to comply with this contractual term. Instead, FW advised that it would not allow any shipments of NTC products until the amount demanded was paid to it.

31. Because FW would not allow products of NTC to be shipped, NTC had to try to cover its contractual obligations to third parties by shipping available products from

locations far away, as from New Jersey, thereby incurring addition freight and transportation costs.

32. NTC did not have available enough alternate product to allow it to comply with contractual terms with third parties. Further, the NTC products being held by FW were approaching a sell by date that would not allow the product to be sold to third parties under routine contractual terms.

33. So as to be able to comply with its contractual obligations to third parties, NTC inquired from FW of the full amount FW claimed was owed by NTC. FW responded that a total amount of $150,224.73 was due and owing as of March 12, 2014.

34. FW did not provide data or documents to NTC to verify the $150,224.73 amount (neither the original $94,565 invoice nor the additional sum of $55,659.7)  it claimed was due and owing.

35. NTC was ready, willing and able to deposit the sum of $150,224.73 in escrow as provided under ¶ 2(h)(ii) the Agreement. FW, however, refused this procedure as set forth under the Agreement and instead again advised it would not allow any NTC product to be shipped until all sums demanded were paid to it.

36. Because of the actions aforesaid of FW, NTC paid FW under protest $150,224.73, which was the amount claimed by FW to be due and owing.

37. FW failed to provide NTC documentation of the product that was destroyed.

38. FW failed to provide NTC accurate and reliable inventory data as it was required to do under the Agreement.

39. FW failed and refused to provide information to NTC of the reason or basis for the $94,565 charge and the additional $55,659.73 it claimed was due and owing.

40. Until FW provides proper information and documentation to NTC of the basis for the charges comprising the $150,224.73 amount claimed, NTC cannot state whether any of these charges are proper.  However, no amount is due FW until the proper information and documentation of the charges is provided.

41. After payment of the $150.224.73 by NTC to FW, FW claimed that an additional amount of $3,550.00 was due and owing FW from NTC.  FW stated it would not allow the transfer of any products of NTC from FW's warehouse until this additional sum was paid.

42. NTC was ready, willing and able to deposit the additional sum of $3,550.00 in escrow as provided under the Agreement. FW refused this procedure as set forth under the Agreement and instead again advised it would not allow any NTC product to be shipped until this additional sum was paid to it.

43. For the reasons stated above, NTC paid under protest to FW the sum of $3,550.00.

44. Even after final move out, FW continues to send invoices to NTC for storage charges claiming it still has product of NTC at its warehouse.

45. It appears that FW's inventory records are inflated and inaccurate, and as a result FW had been overcharging NTC for many months and continues to charge NTC for product that does not exist.

46. NTC is entitled to the  costs of it product which were damaged due to the acts of FW in failing to maintain a proper warehouse, failing to maintain a proper inventory and failing to ship product on a "first in first" out basis so that the sell by date had expired or was about to expire so that the product could not be sold, and which product

FW claims it destroyed. NTC is not responsible for the costs incurred in destroying such product.

47. NTC is entitled to reimbursement for any overcharges due to FW's inflated and inaccurate inventory records.

48. NTC is entitled to all extra shipping costs incurred by NTC due to FW refusal to ship its product in breach of ¶ 2(h)(ii) of the Agreement.

49. NTC is entitled to its attorney's fees and litigation expenses ("collection fees") incurred due to the acts of FW specified above as per ¶ 2(i)(v) of the Agreement.

WHEREFORE, NTC prays for an entry of judgment in its favor and against FW in the amount of $200,000, or in the amount shown by the proof and evidence to be due NTC for breach of contract aforesaid, for its costs herein incurred and expended, for an award of its attorney's fees and expenses, and for such other and further relief as this Court deems just and proper.

## COUNT II (CONVERSION)

50. NTC incorporates by reference paragraphs 1 through 49 above as if fully stated herein.

51. By the acts of FW as aforesaid in taking the products and property of NTC and refusing to allow the product to be shipped and distributed in accordance with the directions of NTC, FW converted the goods and products of NTC.

52. By reason of the actions of FW in converting the property and products of NTC, NTC was required to incur additional expenses for shipment of replacement product to third parties, and to pay FW amounts that were not due and owing.

53. NTC has been damaged in the amount of $175,000 due to the actions of FW in converting its property and products.

54. The actions of FW were willful and wanton and done with malice, so that NTC is entitled to punitive damages.

WHEREFORE, NTC prays for an entry of judgment in its favor and against FW in the amount of $200,000, or in the amount shown by the proof and evidence to be due NTC for conversion of its property as aforesaid, for an award of punitive damages as allowed by law, for its costs herein incurred and expended, and for such other and further relief as this Court deems just and proper.

## COUNT III (CONVERSION)

55. NTC incorporates by reference paragraphs 1 through 49 above as if fully set forth herein.

56. NTC instructed FW it wanted to remove all its product from the FW warehouse. After payments demanded by FW and paid under protest by NTC, NTC sent trucks to pick up all of its product the week of March 17, 2014. FW represented that all NTC product was available for pick up and removal as agreed.

57. In spite of this representation and agreement, FW has sent billings stating it continues to hold 8,098 cases of its product. The billing is marked as Exhibit 2 and attached hereto.

58. FW has converted the products of NTC by failing to allow the product to be picked up and removed as aforesaid.

WHEREFORE, NTC prays for an entry of judgment in its favor and against FW

in the amount of $75,000, or in the amount shown by the proof and evidence to be due NTC for conversion of its property as aforesaid, for an award of punitive damages as allowed by law, for its costs herein incurred and expended, and for such other and further relief as this Court deems just and proper.

## COUNT IV (MISREPRESENTATION)

59. NTC incorporates by reference paragraphs 1 through 58 above as if fully set forth herein.

60. The inventory data supplied by FW states that all of NTC's product was either picked up pursuant to instructions for delivery to third parties or picked up as directed by NTC the week of March 17, 2014 for transfer to a different warehouse.

61. The inventory data supplied by FW does not reflect that any product of NTC was destroyed, as it alleged and for which it demanded payment of $94,565.

62. FW claims that it still has product of NTC, which was not returned in April, 2014, as requested by NTC and represented by FW that all product of NTC had been transferred pursuant to NTC's instructions.

63. The demand of FW for the payment of $94,565 was made with the representation that certain amounts of NTC's products were destroyed, and that the said amount was the proper charge for the labor and disposal costs incurred. These representations were material to the demand for payment and were made with the intention that NTC rely on the statements and representations made.

64. The representations as aforesaid were not true and correct.

65. The statements made as aforesaid were made by FW intentionally with knowledge they were false.

66. Pleading in the alternative, the statements made as aforesaid by FW were made without knowledge of their truth or falsity, and FW had a duty to make sure the statements made were true and correct.

67. Based upon the forgoing, FW demanded $94,565 from NTC and would not let NTC remove its products from the warehouse, either to meet commitments under Third Party Contracts or to move the product to a new warehouse.  As a result, NTC paid under protest the sum of $94,565 to FW, and has been damaged in the amount of said payment.

WHEREFORE, NTC prays for an entry of judgment in its favor and against FW in the amount of $120,000, for an award of punitive damages as allowed by law, for its costs herein incurred and expended, and for such other and further relief as this Court deems just and proper.

                      SHER CORWIN WINTERS LLC

                      __/s/ Michael D. Hart_____
                      Michael D. Hart
                      190 Carondelet Plaza, Suite 1100
                      St. Louis, Mo. 63105
                      314-721-5200
                      Fax: 314-721-5201
                      mhart@scwstl.com